BONAPARTE, County Treas., v. AMERICAN-FIRST NAT. BANK IN OKLAHOMA CITY

No. 19167. Opinion Filed Oct. 29, 1929.

Wilson & Wilson, Embry, Johnson & Tolbert, Brown & Stater, and Wilbur J. Holleman, for defendant in error.

J. K. Wright, Co. Atty., W. F. Smith,

Asst. Co. Atty., and M. W. McKenzie, Municiual Counsellor of Oklahoma City, for plaintiff in error.

ANDREWS, J. The defendant in error, hereinafter called the bank, commenced this action in the district court of Oklahoma county against the plaintiff in error, hereinafter called the county treasurer, to recover money paid for taxes levied against the shares of stock of the bank by the proper agencies of government in Oklahoma county for the fiscal year ending June 30, 1927, said money having been paid by said bank under protest for the use and benefit of the shareholders as provided by the statutes.

It was agreed that the rate of taxation levied against said property was $44.11 per $1,000 of the assessed valuation.

It is the contention of the bank that the tax leived and assessed was illegal, unauthorized, and unenforceable because the same was in excess of the rate of taxation levied against moneyed capital in the hands of individual citizens within the state of Oklahoma, in that the rate assessed against moneyed capital in the hands of the individual citizens for the same year was at the rate of 40 mills per $1,000, and that by reason thereof the rate assessed against the shares of stock was greater than that assessed against the moneyed capital in the hands of individual citizens in competition therewith.

The petition, as supplemented, asserts a similar claim as to the tax paid by the bank upon its real estate. This proposition is not urged on the appeal, no doubt for the reason that the evidence shows that the real estate of the bank was taxed at the same rate as other real estate.

The answer of the county treasurer was, in substance, a general denial.

At the conclusion of the evidence, the county treasurer interposed a demurrer thereto and asserted that the evidence was insufficient in law to entitle the bank to recover. The county treasurer offered no evidence, and stood on his demurrer to the evidence. The court took the matter under advisement and made its findings of facts and conclusions of law and rendered judgment in conformity therewith.

The findings of facts and conclusions of law, with the formal parts omitted, are as follows;

"The court finds from the evidence that the bank, during the year 1926, was engaged, among other things, in the following businesses: Buying and selling automobile notes, cattle notes, notes secured by real estate mortgages, and buying and selling United States bonds and municipal bonds and warrants, and public service corporation bonds; that on January 1, 1926, it had on hand $1,187,152.98 automobile paper, cattle notes $42,825.25, real estate loans or notes secured by real estate mortgage $281,082.70, United States bonds, $3,915,400, municipal bonds and warrants, $1,641,194.06, public service corporation bonds, $17,000. Of course, this only includes a part of the assets of the bank, but it is that portion of the assets that the court deems material in passing upon the question involved in this case.

"The court finds that the bank was buying and selling, and it was a part of its business, these various assets, and that the same are moneyed capital, and that the same were a substantial part of the business carried on by the bank during that year. (While the cattle loans have been listed in this statement of assets, yet the court does not consider this item should be taken into account for the reason that the testimony shows the cattle loans did not extend for a period of over six months, which will be referred to hereafter.)

"The court further finds, with reference to the item of automobile notes, that only one-third of the total amount stated would be notes due and payable over eight months from the date of the notes, being $395,717.66. The testimony reasonably shows that the automobile loans for that year in Oklahoma City approximated $40,000,000, one-third of which would be $13,333,000.

"The testimony shows that in Oklahoma City there were a number of local dealers in bonds, aside from national banks, mostly individuals, who bought and sold bonds upon the market in a sum in excess of $10,000,000.

"As to the real estate mortgage loans, the evidence discloses that for the year 1926 numerous persons and numerous individuals and corporations were engaged in the business of loaning money on real estate security, and that in Oklahoma county there were at least $20,000,000 of loans of this character.

"The evidence also shows that there were also various individuals and corporations dealing in public service corporation bonds by buying and selling the same in the same manner as the plaintiff bank.

"The evidence further developed that the other five or six national banks in Oklahoma City were doing the same kind and character of business, with reference to the moneyed capital above stated, as was the First National Bank, in proportion to the invested capital of the banks and that the banks

in all the larger cities of the state of Oklahoma were doing proportionately the same amount of business, and that in all the other cities there was substantially the same competition by individuals and corporations engaged in these various businesses.

"The only authority that the state has for levying a tax on national banks is that granted to it by act of Congress, and the congressional enactment, section 5219, and the amendment thereto, is the law upon which this question must be determined. This portion of the act giving permission to the various states to tax national banks, reads as follows: 'In the case of a tax on said shares, the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks.*** Nothing herein shall be construed to exempt the real property of associations from taxation in any state or in any subdivision thereof to the same extent according to its value as other real property is taxed.'

"We have three statutory provisions which the court thinks are material in determining this case: Sections 9588, 9607, and 9608 of the Compiled Oklahoma Statutes, 1921.

"Section 9588 provides: 'A tax of 10 cents for each $100 and each remaining major fraction thereof, where such mortgage is for five years or more; 8 cents for each $100 for each mortgage where such mortgage is for four years and less than five years; a tax of 6 cents for each $100 where such mortgage is for three years and less than four years; a tax of 4 cents for each $100 where such mortgage is for two years and less than three years, and a tax of 2 cents for each $100 where such mortgage is for less than two years. * * *'

"Under the congressional enactment, 5219, the permission for a state to levy a tax upon the value of the shares of stock of the national bank, and the mortgage loans held by the bank make up, in part, its capital stock and the value of the shares of stock. The taxation of a national bank upon an ad valorem basis of $44.11 per $1,000, is discriminatory against the bank where other individuals, under the Oklahoma statute, are required to pay only the amount of money stated in the section quoted upon each $100 of mortgage indebtedness during the term the mortgage runs.

"Section 9608 provides: 'Any person owning any bond, note of any duration of over eight months, or other choses in action evidenced by writing located in the state of Oklahoma, may take the same to the office of the county treasurer of the county in which the owner of said bond, note of a duration exceeding eight months, or other choses in action, resides, or he may send a description of the same to said county treasurer and pay to said county treasurer a tax of two per centum of the face amount thereof for five years, or at the option of such person for a greater or less number of years at the same rate, and said county treasurer shall thereupon make an indorsement upon said bond, note of a duration of over eight months or other choses in action, certifying that the same is exempt from all taxation for state, county. city, town, township, school district or other municipal purposes, for a period of five years or for such longer or shorter period for which proportionate tax has been paid, which indorsement or receipt shall be duly dated and signed in the name of the county treasurer of the county in which said property is located, and which said tax is paid, and with the seal of the treasurer of said county affixed. * * * And provided, further, the bonds, notes and other choses in action evidenced in writing held by banking corporations which pay taxes on its capital stock, surplus and undivided profits, shall not be subject to the provisions of this act.'

"This is undoubtedly discriminatory against national banks, and especially so wherein it precludes national banks, with the same kind and character of paper, from the provisions of the statute itself. However, it is otherwise discriminatory for the reason that the bonds and notes of over eight months' duration are a part of the assets of the national bank, and, in this particular case and in the banking business all over the state of Oklahoma where a substantial amount of their assets includes bonds and notes of over eight months' duration, it is discriminatory, and the bank is taxed for a greater amount on this moneyed capital than other individuals.

"Section 9607 provides the manner in which national banks shall be taxed in this state, and reads as follows: 'Every bank located within the state, whether such bank has been organized under the banking laws of this state, or any other territory or state, or of the United States, shall be assessed and taxed upon the actual value of the shares of stock therein, in the county, town, district, village or city where such bank or banking association is located, whether such stockholder resides in such place or not, less such portion thereof as is invested in any bonds issued against the public building fund, issued under authority of chapter 89 of the Session Laws of Oklahoma, 1911, being Senate Bill No. 198, of said session, and less such portion thereof as is invested in real estate situated in this state, which may be separately assessed and taxed. * * *'

"Under this section the only real exemption provided by the Oklahoma laws as to the taxation of banks is real estate and

bonds issued against the public building fund.

"The questions of law involved in this case have been considered and determined by the United States Supreme Court in a number of cases. Probably the clearest exposition of the construction placed on the United States statute is in the case of First National Bank of Guthrie Center v. L. B. Anderson, County Auditor, in an opinion rendered by Justice Van Devanter, decided January 4, 1926, and found in 269 U. S. 341, 46 S. Ct. 135, 138, 70 L. Ed. 295, 302, where the court says: 'National banks are not merely private moneyed institutions, but agencies of the United States created under its laws to promote its fiscal policies, and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents, and then only in conformity with the restrictions attached to its consent. * * * The early legislation respecting these banks contained a restricted consent which afterwards became section 5219 of the Revised Statutes. By it Congress assented to the taxation of the shares to their owners under the laws of the state where the bank was located, subject to the restriction that "the taxation shall not be at a greater rate than is assessed under other moneyed capital in the hands of individual citizens of such state," and further assented to the taxation of the real property of the bank for state, county and municipal purposes "to the same extent according to its value as other real property is taxed." This consent thus restricted was in force when the tax here assailed was levied. The restriction on the taxation of the shares often has been considered by this court. The earlier decisions have been reviewed from time to time in later cases, and all, taken collectively, may be summarized as showing, so far as is material here— "1. The purpose of the restriction is to render it impossible for any state, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of a bank. (Quoting authorities.) 2. The term 'other moneyed capital, in the restriction is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks. (Quoting authorities.) 3. Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking, and also where it is employed substantially as in the loan and investment features of banking, in making investment by way of loan, discount, or other-

wise, in notes, bonds or other securities, with a view to sale and repayment and reinvestment.' (Quoting authorities.)

"The case under consideration, from the view taken of the evidence in the case by this court is almost identical with the case of the First National Bank of Hartford, Wisconsin, against the City of Hartford and the State of Wisconsin. The case is found in 273 U. S. 548, 47 S. Ct. 462, 464, 71 I. Ed. 767, 771, where it is said: 'The evidence shows that the plaintiff in the course of its business receives deposits, loans money, has a savings department, deals in exchange, buys and sells notes, government and other bonds, discounts commercial paper, and acquires real estate mortgages by loan and purchase. On the trial plaintiff called numerous witnesses who gave testimony, uncontradicted by defendant, tending to show the nature and extent of various classes of moneyed capital in the hands of individuals in the state, and the nature of its employment in competition with the business carried on by national banks. There are real estate firms engaged in lending money to individuals in the vicinity of plaintiff's banking house, the amount thus loaned amounting annually from $250,000 to $300,000. According to the testimony, the making of these loans affords the same competition to plaintiff as loans made by banks. And similar conditions obtains throughout the state. There are various individuals, copartnerships, and corporations in the vicinity, engaged in the business of acquiring and selling notes, bonds, mortgages, and securities. Substantial capital is employed in their * * * place of business in Milwaukee and in Chicago, are engaged within the state in the business of buying and selling securities both in vicinity of plaintiff's banking house and elsewhere, and employ capital for that purpose. Securities thus acquired and offered for sale include public utility and other forms of bonds, notes and farm mortgages.'

"It seems to this court that this case could not be better stated than is stated by Justice Stone in the above citation. All of the conditions that existed in that case existed in this case. If anything there is more competition in the case at bar than there was in the case quoted.

"Justice Stone, in the case of State of Minnesota v. First National Bank of St. Paul, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774, in the second syllabus says: 'Capital invested in business by individuals or in the shares of corporations which loan large amounts of money on notes, bonds and mortgages, is moneyed capital, * * * section 5219, prohibiting taxation discriminating against shares of national banks.'

"In the case of Munn, County Treasurer,

v. Des Moines National Bank, 18 Fed. (2nd) 269, Judge Sanborn, in the second syllabus, says: 'A tax on bank stock in excess of that on other moneyed capital used in competition with bank capital, held denial of equal protection, illegal and void.'

"Certain phases of this case are also decided in the case of Central National Bank of Topeka, Kansas, v. McFarland, decided by Judge Pollock in 20 Federal Reporter, Second Series, page 416.

"It therefore must be the conclusion and judgment of this court that the shares of stock of the plaintiff bank, in common with all other national banks of this state, were and are taxed at a higher rate under the laws of this state than moneyed capital of individuals and corporations which come in competition with the capital and shares of stock of the plaintiff bank, and that there are a large, material number of individuals, firms, and corporations other than banks which did have and employ substantial sums and amounts of money and capital in the business of loaning money and in lending on the security of notes, bonds and mortgages, and buying and selling securities and bonds, and that such competing money and moneyed capital is substantial in amount and is engaged in substantial competition with the plaintiff bank, and that the tax paid by the plaintiff at the rate of $44.11 on the thousand dollars is excessive and illegal, and that in as much as the plaintiff is willing to pay a four-mill tax—and that would be as large a tax as could possibly be assessed against the plaintiff—it would be the judgment of the court that the tax of the plaintiff be reduced to four mills on a valuation of $460,230, to wit, $1,840.92; and the defendant, county treasurer of Oklahoma county, is hereby ordered and directed to refund and pay to the plaintiff $18,459.84.

"As to the tax upon the real estate, there seems to be no question but that the real estate of national banks should be taxed the same as other real estate in the state, and, as far as this court is advised, the same tax that is levied against the real estate of the plaintiff and which has been paid, is a proper tax, and no order will be made affecting the payment of the same."

It must be kept in mind that this judgment was rendered without any evidence being offered by the county treasurer and on a demurrer of the county treasurer to the evidence of the bank. The settled rule in this state is that a demurrer to the evidence admits every fact which the evidence in the least degree tends to prove and all inferences or conclusions that may be reasonably and logically drawn from the evidence; and this court will consider as withdrawn all evidence which is

most favorable to the party demurring. Forry v. Brophy, 116 Okla. 99, 243 Pac. 506; Nelson v. Peterman, 119 Okla. 125, 249 Pac. 333; City of Pawhuska v. Button, 123 Okla. 61, 251 Pac. 1101. This finding of fact is supported by the evidence.

This leaves for the determination of this court only the law applicable to the facts as shown.

The state had no right to tax shares of stock in a national bank until that authority was granted by Congress through legislation which now appears as section 548, U. S. C. A. vol. 12, page 366, and which was and is a grant of authority to the state, with limitations.

In view of the fact that the state has elected to impose a tax upon shares of stock, which, under the federal statute, must be in lieu of all others, we will discuss only that portion of the Act of Congress pertaining to the taxation of shares of stock. The limitation placed thereon is that "In the case of a tax on said shares, the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state **coming into competition with the business of national banks. * * *"** (Emphasis our own.)

The Legislature of Oklahoma, recognizing the right to tax national banks, adopted what now appears as section 9607, C. O. S. 1921. That statute imposes a tax upon shares of stock. The Legislature did not see fit to impose the limitation provided by the Act of Congress, but did impose a limitation as follows:

"* * * Subject, however, to the restrictions that taxation of such shares shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of the individual citizens of the state. * * *"

It will be noted that the limitation imposed by Congress is restricted to moneyed capital **coming into competition with the business of national banks,** while that imposed by the state is upon moneyed capital in the hands of the individual citizens of the state. There is no provision in our statutes requiring that the moneyed capital in the hands of the individual citizens of the state shall come **into competition with the business of national banks.** While the Legislature had the authority under the federal act to impose that limitation, it did not elect to do so.

Our statute was before this court in Comanche County et al. v. American National

194

Bank of Lawton, 122 Okla. 34, 252 Pac. 408, in an opinion written by Mr. Justice Phelps holding that:

" 'Moneyed capital in the hands of the individual citizens' includes money invested in private banking enterprises, investments of individuals in securities that represent money at interest, and other evidences of indebtedness such as normally enter into the banking business, and where a discrimination in the assessing of shares of stock in a bank for taxation is claimed in violation of section 9607, Comp. Stats. 1921, the burden of proving such discrimination is upon the person alleging it"

—thus limiting the provisions of our statute to moneyed capital in the hands of the individual citizens such as normally enters into the banking business.

We decline to further limit the provisions of our legislative act. The Legislature, with full knowledge of the federal statute and the construction placed thereon by the federal courts, saw fit to adopt the Oklahoma statute in the language used. For this court to construe the Oklahoma statute to conform to the Act of Congress would be for this court to read into our statute limitations which our Legislature has failed to provide. Applying the construction placed upon the statute in Comanche County et al. v. American National Bank of Lawton, supra, we find that the rate of taxation on shares of stock in a national bank shall not be in excess of that levied and assessed upon any other moneyed capital in the hands of individual citizens of the state, including investments of individuals in securities that represent money at interest and such as normally enter into the banking business.

An examination of sections 9588 and 9608, C. O. S. 1921, discloses that in each of these instances provision is made for a rate of taxation which is less than that shown by the record in this case to have been imposed upon the shares of stock in this bank.

The question is, Do sections 9588 and 9608, Id., provide a rate of taxation upon moneyed capital in the hands of individual citizens of the state, including investments that represent money at interest and such as normally enter into the banking business? If they do so, then they provide a maximum rate of taxation which, under section 9607, Id., can be imposed upon shares of stock in a bank organized under the provisions of the United States statutes.

We think that sections 9588 and 9608, Id., provide such a rate of taxation.

Section 9588, Id., provides for a tax upon real estate mortgages, and that the same shall be paid by the mortgagee. An individual citizen of the state loaning his money on real estate security is authorized to pay this mortgage tax in lieu of ad valorem taxes. This bank loaned a portion of its funds on real estate security. The evidence in this case shows that this bank met with difficulty in loaning its funds on real estate security by reason of this discrimination in favor of the individual citizen. Certainly it cannot be said that a real estate mortgage given to secure a loan of money is not such a transaction as normally enters into the banking business. But if there was any question as to the correctness of this general proposition, this court is bound by the evidence in this case which clearly shows that not only this bank, but other banks, loaned a considerable portion of their funds upon real estate securities, and that they would have loaned more thereof had they been able to do so, except for discrimination in favor of individual citizens.

Section 9608, Id., provides a rate of taxation on bonds, notes of any duration of over eight months, and other choses in action evidenced by writing. There is a specific provision therein prohibiting the application of this statute to banking corporations. An individual loaning money on notes of over eight months' duration is given the advantage of this rate of taxation, while the banks are deprived thereof. Individuals owning other choses in action evidenced by writing are given advantage of this rate of taxation, while banks are deprived thereof. The evidence in this case clearly shows that this bank loaned a part of its funds on notes of over eight months' duration, that it bought such notes as well as bonds, and that it owned other choses in action evidenced by writing. Certainly these are such transactions as normally enter into the banking business.

The evidence in this case, admitted by the demurrer to be true, shows that not only in Oklahoma City, but in cities in the state in number sufficient to warrant the conclusion that the practice is general, bonds, notes of any duration over eight months, and other choses in action evidenced by writing normally enter into the banking business in Oklahoma.

For these reasons, this court must hold that sections 9588 and 9608, Id., establish the maximum rate of taxation which may be levied and assessed against shares of

stock in a bank in Oklahoma organized under the laws of the United States. It is not necessary for this court to discuss the effect of the federal statutes as to competition, for under the clear wording of our own statute there is no provision for competition. If the Legislature had cared to impose the limitation provided by the Act of Congress, it would have been easy to do so, but since the Legislature did not see fit to impose such a limitation, but imposed one which was much more favorable to the national banks, this court will leave the provision as the Legislature made it.

This court in Comanche County et al. v. American National Bank of Lawton, supra, said:

"Classification of property for purposes of taxation is a legislative function, and when such classification is not based upon an invidious or unreasonable distinction, it will not be interfered with by the courts, and shares of stock in banks and banking associations may be made a separate class for such taxation purposes."

The Legislature has seen fit to classify property for the purpose of taxation. It has classed bank stock as such, and in so doing it has said that the tax thereon shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of the state. This court in construing that legislative enactment has limited it to such transactions as normally enter into the banking business.

The Legislature has seen fit to provide a rate of taxation on moneyed capital in the hands of individual citizens, including investments of individuals which represent money at interest and such as normally enter into the banking business. By so doing the Legislature has fixed a maximum rate of taxation on bank stock in banks in Oklahoma organized under the statutes of the United States.

The tax levied, assessed, and collected in this case is in excess of that authorized by the statutes of Oklahoma, and in so far as it is excessive, it is void. Having been paid under protest, the excess may be recovered.

The record shows and the finding of facts states that "* * * inasmuch as the plaintiff is willing to pay a four-mill tax—that would be as large a tax as could possibly be taxed against the plaintiff—it would be the judgment of the court that the tax of the plaintiff be reduced to four mills. * * *" By this admission the bank has deprived itself of the benefit of the rate of taxation fixed by section 9588, Id., and is limited to that fixed by section 9608, Id. The judgment fixing the rate of taxation at four mills is affirmed.

Finding no error of which the county treasurer may complain, the judgment of the trial court is in all things affirmed.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, CULLISON, and SWINDALL, JJ., concur. HEFNER, J., disqualified.

Note.—See under (1) ann. 60 L. R. A. 346; 26 R. C. L. p. 250; 3 R. C. L. Supp. p. 1464. See "Taxation," 37 Cyc. p. 746, n. 77; p. 827, n. 35; p. 836, n. 2, 4.