**BOARD OF COM'RS OF OKLAHOMA COUNTY v. STATE BOARD OF EQUALIZATION.**

No. 23106. Opinion Filed Feb. 23, 1932.

184

Lewis R. Morris, County Attorney, and B. C. Logsdon, Assistant County Attorney, for relator.

J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for respondent.

CLARK, V. C. J. This is an original action in this court by the board of county commissioners of Oklahoma county, as relator, against the State Board of Equalization, as respondent, wherein relator alleged in its petition in substance:

"On or about the 10th day of September, 1931, the county assessor of Oklahoma county, * * * certified to the State Board of Equalization in the manner and form required by law the total assessed valuations for tax purposes, for the tax year 1931, of property both real and personal situated in said county and state, subject to ad valorem taxation therein, and that among the valuations so certified to the State Board of Equalization by said county assessor as aforesaid was a total assessment against the shares of stock of all banking corporations located in Oklahoma county in the sum of $5,752,103; * * *

"On the 3rd day of November, 1931, the State Auditor of the state of Oklahoma, * * * certified back to the proper officers of Oklahoma county said total assessments and valuations, so certified to the State Board of Equalization by the county assessor of Oklahoma county, as equalized corrected and adjusted by said State Board of Equalization and that said certificate of the State Auditor disclosed that the State Board of Equalization in the process of

equalizing, correcting and adjusting the assessments and valuations of personal property in Oklahoma county struck therefrom and entirely eliminated from the assessed valuations of said county for tax purposes for the tax year 1931, the total assessed valuation of all banking corporations situated within said county in the said sum of $5,752,103; * * *

"That the arbitrary, capricious and unauthorized action of the State Board of Equalization * * * results in decreasing the total assessed valuation of the property in Oklahoma county subject to taxation on an ad valorem basis for the tax year 1931 below the fair cash value thereof, and will result in the necessary levy of an increased rate for ad valorem taxation over and above the rate necessary and required if based upon the fair cash value of all property in said county assessed for and subject to taxation upon an ad valorem basis, as required by law, in order to meet the estimated needs and necessary requirements of said Oklahoma county and the various municipal subdivisions thereof as estimated and certified to the excise board of Oklahoma county as a basis for appropriations for the fiscal year beginning July 1, 1931. * * *"

Prayed for judgment, adjudging and decreeing that the action of said State Board of Equalization in striking the assessed valuations of said banking corporations from the assessment rolls of Oklahoma county for the tax year 1931 was in excess of the jurisdiction of said State Board of Equalization and therefore without authority of law and void; and that the action of the State Board of Equalization be vacated and said board ordered and directed to restore said bank valuations to the assessed valuations of Oklahoma county for the tax year 1931, and that it proceed to equalize, correct, and adjust the total valuations of said Oklahoma county as certified to it by the county assessor in the manner and form required by law, by increasing or decreasing the aggregate assessed value of the property of said county to conform to the fair cash value thereof.

The respondent, State Board of Equalization, in their amended answer, denied each and every material allegations therein set forth, except such as specifically admitted. Alleged:

"On or about the 10th day of September, 1931, the county assessor of Oklahoma county, * * * transmitted to the Oklahoma Tax Commission an abstract of his assessment as revised by the county board of equalization for the tax year 1931-1932 of property, both personal and real, situated in Oklahoma county, state of Oklahoma, and * * * in said abstract of assessment so transmitted to the Oklahoma Tax Commission by said

county assessor was included the assessment of all shares of stock of all banking corporations, both state and national, located in Oklahoma county in the amount of $5,752,-103. * * *

"That immediately following receipt by the Oklahoma Tax Commission from the county assessor of Oklahoma county, Oklahoma, of the abstract of assessment, as revised by the county board of equalization of Oklahoma county, for the tax year 1931-1932, of both personal and real property situated in Oklahoma county, said Oklahoma Tax Commission examined, equalized, corrected and adjusted the same as provided and required under section 3, article 1, chapter 66, Session Laws 1931, and section 9671, Compiled Oklahoma Statutes 1921. * * *

'That after the assessment of Oklahoma county, Oklahoma, for the tax year 1931-1932 had been equalized, corrected, and adjusted by the Oklahoma Tax Commission, as required by law, said Oklahoma Tax Commission laid the same as equalized, corrected, and adjusted by it before the State Equalization Board, and after the action of the Oklahoma Tax Commission on said assessment was approved by the State Equalization Board, and after said assessment was equalized, corrected and adjusted by the State Board of Equalization, * * * the State Auditor of the state of Oklahoma, on November 3, 1931, certified to the proper officers of Oklahoma county such assessment as equalized, corrected and adjusted. * * *

"That fifty-five counties in the state of Oklahoma, including Oklahoma county, included in their assessments and valuations for the tax year 1931-32 assessments of all the shares of stock of all banking corporations, both state and national, located in said counties, and twenty-two counties in said state omitted from their assessments and valuations for the tax year 1931-32 all shares of stock of all banking corporations, both state and national, located in said county. * * *

"That the maximum rate of tax that could lawfully be levied and assessed against shares of stock in banking corporations, both state and national, prior to the passage of article 7, chap. 66, Sess. Laws 1931, was insignificant as compared to the rate of tax which for state, county and municipal subdivision purposes may be levied and assessed against all other personal and real property except exempt property and property taxed pursuant to and by virtue of sections 9588 and 9608, C. O. S. 1921."

Prayed for judgment sustaining the action of the Oklahoma Tax Commission in striking from the assessment and valuation of Oklahoma county for ad valorem tax pur-

poses for the fiscal year 1931-32 all shares of stock of all banking corporations, and sustaining the State Board of Equalization's approval thereof.

The relator in its brief presents two questions for determination:

(1) Was the action of the State Board of Equalization in striking the assessed valuation of banking corporations from the personal assessments of Oklahoma county in excess of its jurisdiction, without authority of law, and therefore void?

(2) Is article 7, chap. 66, S. L. 1931, retroactive in operation so as to authorize the action so taken by the State Board of Equalization against the bank valuation of Oklahoma county for the tax year 1931?

Portions of article 7, ch. 66, Session Laws 1931, pertinent to the issues involved in the case at bar are as follows:

Section 3, subdivisions 1, 3, 4, 7, 8, and 9:

"(1) The term 'person' means an individual, fiduciary, trust or estate, a partnership or a corporation."

"(3) The term 'fiduciary' means a guardian, trustee, executor, administrator, receiver, conservator or any person acting in any fiduciary capacity for any other person.

"(4) The term 'corporation' includes associations, joint stock companies, common-law or statutory trusts and any and all other business organizations or entities, other than natural persons, under whatever designation same may transact business, which are incorporated or organized under the laws of Oklahoma or doing business in Oklahoma under the laws of any other state, the United States or any foreign country."

"(7) The term 'taxpayer' means any person subject to a tax imposed by this act.

"(8) The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is imposed under this act. 'Taxable year' includes in case of a return made for a fractional part of a year, under the provisions of this act or under regulations prescribed by the Oklahoma Tax Commission, the period for which such return is made. The first taxable year, to be called the taxable year 1931, shall be the calendar year 1931 or any fiscal year ending during the calendar year 1931.

"(9) The term 'fiscal year' means an accounting period of twelve months ending on the last day of any month other than December."

Section 4:

"A tax is hereby levied for the calendar

year 1981, and for each taxable year thereafter, at the rates prescribed in section 12 of this act, upon the entire net income of every person, as herein, defined, residing or domiciled within this state, derived from all property owned and from every business, trade, profession or occupation, carried on within this state; and a like tax is hereby levied for the calendar year 1931 and for each taxable year thereafter, at the rates prescribed in said section 12 hereof, upon the net income of every person, as herein defined, residing or domiciled elsewhere, derived from property owned and business done within this state."

Section 12 and the subdivisions thereunder:

"There is hereby levied upon the net income of all taxpayers, as herein defined, to be ascertained, computed and collected, as herein provided, an annual tax, as follows:

"(a)  Two per centum (2%) on net income up to and including ten thousand dollars ($10,000) ;

"(b)  Three per centum (3%) on that in excess of ten thousand dollars ($10,000) and not exceeding twenty thousand dollars ($20,000).

"(c)  Four per centum (4%) on all net incomes in excess of twenty thousand dollars ($20,000) and not exceeding one hundred thousand dollars ($100,000).

"(d)  Five per centum (5%) on all net incomes in excess of one hundred thousand dollars ($100,000) the total tax, in all cases, shall be computed by adding together the amounts payable under each of said rates."

Section 13:

"That for the purpose of complying with the terms of section 5219, United States Revised Statutes, as amended, national banking associations, state banks and all other business corporations, associations, and individuals, whose moneyed capital is employed in competition with national banking associations, are hereby classified for the purpose of the tax herein levied. Such tax on the net income of all taxpayers derived from capital employed in competition with national banking associations, and that imposed upon the net income of such national banking associations, shall, at all times, be uniform and equal, as required by, and within the meaning of, said section 5219, United States Revised Statutes, as amended."

Section 29:

"All acts or parts of acts in conflict herewith are hereby expressly repealed. Provided, that this act shall not repeal or affect existing income tax law, as to taxes already accrued, nor be construed to repeal the enforcement or penal provisions of the

present income tax law, as to income taxes accrued and unpaid."

Which act carries the emergency clause and was approved April 4, 1931.

Section 5219, Revised Statutes of the United States, amended March 4, 1923, chap. 267, 42 Stat. 1499, amended March 25, 1926, chap. 88, 44 Stat. 223 (vol. 12, U. S. C. A., sec. 548), provides as follows:

"The Legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, provided the following conditions are complied with:

"1.  (a)  The imposition by any state of one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b)  In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: provided, that, bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.

"(c)  In case of a tax on or according to or measured by the net income of an association, the taxing state may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing state upon mercantile, manufacturing, and business corporations doing business within its limits: Provided, however, That a state which imposes a tax on or according to or measured by the net income of, or a franchise or excise tax on, financial, mercantile, manufacturing, and business corporations organized under its own laws or laws of other states and also imposes a tax upon the income of individuals may include in such individual income dividends from national banking associations located within the state on condition that it also include dividends from domestic corporations and may likewise include dividends from national banking associations located without the state on condition that it also includes divi-

dends from foreign corporations, but at no higher rate than is imposed on dividends from such other corporations.

"(d) In case the dividends derived from the said shares are taxed, the tax shall not be at a greater rate than is assessed upon the net income from other moneyed capital.

"2. The shares of any national banking association owned by nonresidents of any state shall be taxed by the taxing district or by the state where the association is located and not elsewhere; and such association shall make return of such shares and pay the tax thereon as agent of such nonresident shareholders.

"3. Nothing herein shall be construed to exempt the real property of associations from taxation in any state or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed.

"4. The provisions of section 5219 of the Revised Statutes of the United States as in force prior to March 25, 1926, shall not prevent the legalizing, ratifying, or confirming by the states of any tax heretofore paid, levied, or assessed upon the shares of national banks, or the collecting thereof, to the extent that such tax would be valid under said section. (As amended March 25, 1926, c. 88, 44 Stat. 223.)"

Under section 13, art. 7, ch. 66, S. L. 1931, all banks are classified for the purpose of the net income tax laid under said act. The Legislature was particular to observe the requirements of section 5219, R. S. U. S.; amended and conformed said article 7, chap. 66, S. L. 1931, thereto in relation to taxation of banks. Under said section 5219, amended, Congress has permitted the states to tax national banks (1) on shares of stock, (2) by including dividends derived from shares of stock in the taxable income of the owner or holder thereof, (3) on the net income. The imposition by a state of any one of the foregoing forms of taxation is in lieu of the others, it being specifically so provided.

Therefore, when the Legislature of this state by article 7, chap. 66, S. L. 1931, laid the net income tax therein provided for on the net income of banks, it elected that form of taxing banks in lieu of all other forms of tax on banks.

Article 7, chap. 66, Session Laws 1931, became effective April 4, 1931; and the tax laid thereunder on the net income of banks at that time became the tax applicable to banks for the tax year beginning July 1, 1931, ending June 30, 1932, in lieu of all other forms of taxation.

The relator in its reply brief admits that the Legislature has the right to substitute one form of taxation for another, and as stated by relator:

"The right of the Legislature to substitute one form of taxation for another has never been in doubt since the decision of this court in the case of In re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 Pac. 362."

In the case of City State Bank of Oklahoma City v. Stone, 59 Okla. 228, 158 Pac. 1168, this court, after considering sections 1 and 2, art. 10, Constitution of Oklahoma; section 7378, Revised Laws 1910, being similar to section 9695, C. O. S. 1921, and chapter 120, S. L. 1910-11, sec. 1, the same being section 9719, C. O. S. 1921, amended by section 1, chap. 151, S. L. 1923, amended by section 1, chap. 53, S. L. 1929, in the body of the opinion, at page 229, said:

"From these provisions of the Constitution and the statutes it appears that as to revenue matters the year begins upon the 1st day of July and ends on the 30th day of June following"

—and in the 1st paragraph of the syllabus, held:

"By the provisions of our Constitution and statutes the fiscal year begins July 1st, and the term, '1911 taxes,' means the taxes levied for the fiscal year beginning July 1, 1911, and not the tax that may have been levied for the calendar year 1911."

In the case of Bonaparte, County Treas., v. American-First Nat. Bank in Oklahoma City, 139 Okla. 189, 281 Pac. 958, this court held in the 1st paragraph of the syllabus:

"Classification of property for purposes of taxation is a legislative function and, when such classification is not based upon an invidious or unreasonable distinction, it will not be interfered with by the courts, and shares of stock in banks and banking associations may be made a separate class for such taxation purposes. Comanche County et al. v. American National Bank of Lawton, 122 Okla. 34, 252 Pac. 408."

And in the case of In re Oklahoma Nat. Life Ins. Co., 68 Okla. 219, 173 Pac. 376, this court in the fifth paragraph of the syllabus, said:

"Article 10, sec. 8 (Williams', sec. 273), of the Constitution does not require that all property shall be taxed ad valorem, but only property shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale, when it is taxed ad valorem."

And in the body of the opinion, at page 225 of Okla. Rep., this court said:

"The criticism of legislation substituting

special taxes for ad valorem taxation of certain classes of property as unwise should be addressed to the Legislature. We cannot question the wisdom of the law, but only the power of the Legislature to enact it."

We are of the opinion, after the passage and approval of article 7, chap. 66, Sess. Laws 1931, shares of stock of banking corporations were no longer taxable ad valorem, and were rendered nontaxable ad valorem for the fiscal year 1931-32; and the method of taxing banks was and is from and after the passage and approval of said act as therein set out.

Section 9607, C. O. S. 1921, which provides for the assessment of state and national banks on the valuation of the shares of stock therein, was repealed by the act of the Legislature by article 7, chap. 66, Sess. Laws 1931, and a new method for taxing state and national banks was adopted by the Legislature, which law became effective on April 4, 1931. This law, being in force and effect prior to the fiscal year beginning July 1, 1931, would take precedence over all former laws providing for the assessment and collection of taxes against banks, it being the last expression by the Legislature on this subject.

The banks undoubtedly are liable for taxes for the fiscal year beginning July 1, 1931, and the only method provided for taxing banks is contained in the 1931 Sess. Laws, supra. The fact that the county assessor of Oklahoma county listed the stock of said banks for taxing purposes did not fix any lien or create any liability against said banks for taxes. The lien is created and the liability fixed when the rate is determined and levied as provided by law; and the law which provided for assessing banks on the value of the shares of stock having been repealed and a new method of taxation substituted therefor, the State Tax Commission and the State Board of Equalization had a right to strike the valuation so fixed by the county assessor from the tax rolls of Oklahoma county, for the reason there was no law authorizing state and national banks to be assessed on the valuation of the shares of stock, as the same was listed by the county assessor.

Prior to the enactment of article 7, chap. 66, Sess. Laws 1931, the largest rate of tax that could be applied, by reason of the express provisions of section 9607 and the inhibitions contained in section 5219, U. S. Rev. St., amended, is that provided by sections 9588 and 9608, C. O. S. 1921. The

maximum rate of tax to which bank shares were subject was 1/5 of 1 mill—20c on $1,000 valuation; while other property taxable ad valorem was and still is subject to the full state, county, and municipal rates, which run on the average of 50 mills, or $50 on $1,000 valuation. Bank shares were being subjected to approximately 1/250 as much ad valorem tax as is required of other property subject to ad valorem taxation.

The Legislature sought to correct this gross inequality in taxation and to prevent the virtual escape of banks from taxation, and in an effort to do so enacted article 7, chap. 66, S. L. 1931, which changed the form of taxation of banks from the ad valorem to the income method. The Legislature knew that banks may be taxed under only one form of taxation. This was wholesome legislation in the interest of equality of taxation, and should be upheld by this court. Banks, banking corporations and associations should be required to pay their proportionate share of the cost of government, and the Legislature had the authority to equalize the taxes that the burden might fall equally on all property in the state of Oklahoma.

Prior to the enactment of article 7, chap. 66, Sess. Laws 1931, which became effective April 4, 1931, only the first step of procedure in the method of taxation under sec. 9607, C. O. S. 1921, had been performed, and that is, the listing of shares of stock of banks by the county assessor. No lien had been created thereby and no liability had been created on the banks by reason thereof. The next step in the procedure of taxation was the submission by the county assessor of Oklahoma county to the county equalization board of the rolls showing property listed by him for tax purposes for the fiscal year beginning July 1, 1931. This step had not been reached before the new method of taxation of banks had become effective.

It was the duty of the county equalization board at its meeting in June, 1931, after the enactment of article 7, chap. 66, Sess. Laws 1931, and it was authorized and empowered under section 9671, C. O. S. 1921, to strike the shares of stock of banks from the tax rolls.

Section 9671, Compiled Oklahoma Statutes, 1921, in part provides:

"* * * Said board shall have the authority to raise, lower and adjust individual assessments, fixing the same as the fair

cash value of the property; to add omitted property and to cancel assessments of property not taxable."

Upon the failure of the county equalization board to so strike shares of stock of banks from said county rolls, the Oklahoma Tax Commission was authorized and empowered to do so under authority granted it by section 3, art. 1, chap. 66, Sess. Laws 1931, under its auxiliary service to the State Board of Equalization, which provides in part as follows:

"All duties, powers and authority of all officers and agencies of the state, relating to the assessment of railroads and public service corporation property and to the adjustment and equalization of the valuation of real and personal property of the several counties of the state, which have been conferred upon them and vested in them, by law, are hereby transferred to, conferred upon and vested in, said Commission; excepting only the duties, powers and authority of the State Board of Equalization, as fixed and defined by section 21, article X, of the Constitution.

"In the assessment of all property which it is their duty to assess for taxation, all county officers shall continue to perform all the duties required of them and to exercise all the powers and authority vested in them, by law, except that they shall act under the direction of said Commission and under rules and regulations to be prescribed by it, not inconsistent with existing laws.

"The findings of said Commission as to the assessment of railroad and public service corporation property and as to the adjustment and equalization of the valuation of real and personal property of the several counties of the state shall, by said Commission, be laid before the State Board of Equalization as recommendations for its final action under section 21, article X, of the Constitution."

The action of the Oklahoma Tax Commission and the State Board of Equalization in striking from the assessment rolls of Oklahoma county the shares of stock of all banking corporations located in Oklahoma county is affirmed.

LESTER, C. J., and CULLISON, ANDREWS, and KORNEGAY, JJ., concur. RILEY, J., concurs in conclusion. SWINDALL and McNEILL, JJ., absent. HEFNER, J., disqualified, not participating.

Note.—See under (3) 6 R. C. L. 426, 427; R. C. L. Perm. Supp. p. 1715; R. C. L. Pocket Part, title Constitutional Law, § 424.