The First National Bank Of St. Joseph, Missouri, a Corporation, The American National Bank Of St. Joseph, Missouri, a Corporation, The Tootle-Lacy National Bank Of St. Joseph, Missouri, a Corporation, The Empire Trust Company Of St. Joseph, Missouri, a Corporation, The First Trust Company Of St. Joseph, Missouri, a Corporation, The Farmers State Bank Of Inza, a Corporation, Mechanics Bank Of St. Joseph, Missouri, a Corporation, The Drovers And Merchants Bank Of St. Joseph, Missouri, a Corporation, The Park Bank Of St. Joseph, Missouri, a Corporation, Plaintiffs-Appellants, Missouri Valley Trust Company, a Corporation, Intervenor-Appellant, v. Buchanan County, Missouri, B. A. Stanton, Charles W. Gardner and John E. Smith, as Members of and Constituting the County Court of Buchanan County, Missouri, The School District Of St. Joseph, Missouri, a Corporation, State Of Missouri, M. E. Morris, Director of Revenue of the State of Missouri, J. E. Taylor, Attorney General of the State of Missouri, Defendants-Appellants, City Of St. Joseph, a Corporation.—No. 40314.—205 S. W. (2d) 726.

Division Two, November 10, 1947.

*Culver, Phillip, Kaufman & Smith, Ben Phillip, Brown, Douglas & Brown,* and *R. L. Douglas* for plaintiffs and intervenor-appellants.

*J. E. Taylor,* Attorney General, *O. R. Newcomer, Bart M. Lockwood,* and *Alva F. Lindsay* for defendants-appellants.

*Ronald S. Reed,* City Counselor, and *Milton Litvak,* Assistant City Counselor, for respondent.

1208

■■■ .BARRETT, C.—Three national banks and six state banks and trust companies in St. Joseph instituted this action for a declaratory judgment.. The action is against the City of St. Joseph, Buchanan County and the County Court of Buchanan County, the School District of St. Joseph, the Director of Revenue of the State of Missouri and the Attorney General of Missouri. In general the action involves the construction of certain sections of the 1945 Constitution of Missouri, certain sections of the 1939 Revised Statutes of Missouri relating to taxes and to cities of the first class, five of the acts of the 1945 General Assembly and an ordinance of the City of St. Joseph. Specifically, the purpose of the action is to determine whether the nine banks and trust companies are bound to pay, either or both, a tax levied by the city and a tax levied by the General Assembly in 1945 and, if they are bound to pay both taxes, whether they are entitled to a credit on the taxes imposed by the act of the General Assembly for any taxes paid under the city ordinance. The trial court found that the city ordinance levied a valid tax for the year 1946 and, in effect, that the banks and trust companies were obligated to pay that tax. The court declared that the act of the General Assembly was not operative for any part of the year 1946 as to any of the eight banks and trust companies and, therefore, they were not obligated to pay the tax imposed by that act for that year. The court declared, however, that the act of the General Assembly imposing a tax was operative as to these banks and trust companies for the year 1947 and thereafter and that they were accordingly obligated to pay those taxes. The court found, since the act was not operative in 1946, that in paying the taxes for 1947 and thereafter the banks and trust companies were not entitled to credit for any taxes paid under the city ordinance. In conclusion, the court specifically declared, as we do now, that its judgment as to the act of the General Assembly applied only to banks and trust companies located within the City of St. Joseph and, we further add, solely to the immediate problems presented by this action. Though their interests and views are not the same all the parties, except the City of St. Joseph, have separately appealed.

1210

■ Since 1909 (Laws Mo. 1909, p. 138) the charter of cities of the first class has authorized a city tax on the shares of stock of state and national banks based on the actual cash value of the stock. Mo. R. S. A., Sec. 6306. The Banks were required to list the stock with the assessor as of the 15th ■■■ day of September of each year and the taxes assessed on the shares of stock were declared to be ''a lien upon such shares from the fifteenth day of September before the fiscal year for which the same are assessed, . . .'' On September 15, 1945, pursuant to the provisions of the charter, the City of St. Joseph assessed the shares of stock of all the banks in the city. The assessment was returned by the City Assessor to the city council on April 17, 1946, and on that day the council enacted Special Ordinance No. 12723 levying the tax. The ordinance was approved April 29, 1946, and levies a tax on all the banks totalling $28,902.25. The banks alleged in their petition for a declaratory judgment and contend here as the other appellants, the state, the county and the school district, do that the ordinance and tax is invalid.

■ It is argued, in the first place, that prior to the approval of the ordinance on April 29, 1946, the city had been deprived, by the Constitution and laws of Missouri, of its power to levy a tax on bank shares or any other intangible personal property. It is urged, by that date, that the Constitution and laws of Missouri had vested the exclusive power to levy and collect intangible taxes, especially intangible taxes on banks, in the State of Missouri. The pattern of the argument is this:

The 1945 Constitution changed the scheme of taxation in Missouri. For the purpose of taxation property was divided into three classes; real property, tangible personal property and intangible personal property. As to intangible personal property the Constitution provides that ''All taxes on property in Class 3 and its subclasses, *and the tax under any other form of taxation substituted by the general assembly for the tax on bank shares*, shall be assessed, levied and collected by the state and returned as provided by law, less two per cent for collection, to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy.'' Const. Mo. 1945, Art. 10, Sec. 4. It was contemplated, as it is argued here, that the tax provisions of the Constitution should become effective and be carried out as soon as possible. It is assumed that it was contemplated that the provisions of the Constitution should become operative as far as possible from its effective date, March 30, 1945. See the Governor's Proclamation in the supplement to 28 Mo. R. S. A., p. 4. It was expressly contemplated by its Schedule 2 that all laws consistent with the Constitution should remain in effect until amended or repealed but it was also expressly contemplated that *''All laws inconsistent with this Con-*

*stitution,* unless sooner repealed or amended to conform with this Constitution, *shall remain in full force and effect until July 1, 1946.*"

To effectuate the purposes of the Constitution and particularly to carry out the contemplated tax scheme the 1945 General Assembly enacted a series of laws. Among other laws, the General Assembly repealed Article 1 of Chapter 74, R. S. Mo. 1939, Mo. R. S. A., Secs. 10936-10942, entitled "What Property Taxable And Where" and enacted the scheme of taxation contemplated by Section 4 of Article 10 of the 1945 Constitution. This act was effective December 19, 1945. Laws Mo. 1945, p. 1799. Another act, effective as of December 5, 1945, repealed the older law relating to county assessors and the assessment of property (Mo. R. S. A., Secs. 10943-10995, 10997-11000) and enacted a different method and plan relating to county assessors and assessments. Laws Mo. 1945, p. 1782. This act plainly repealed the previous law (Mo. R. S. A., Secs. 10959-10960) under which the state and counties levied an ad valorem tax on the shares of stock of state and national banks. A new act, approved April 19, 1946, which did not specifically repeal any previous law, provided for the taxation of intangible personal property in accordance with the contemplated new scheme. Laws Mo. 1945, p. 1914. A further law, the "Bank Tax Act" (House Bill 888) levied "an annual tax according to and measured by its net income in accordance with method numbered (4) authorized by the Act of Congress of March 25, 1926" on all national banks and on all state banking institutions. Laws Mo. 1945, p. 1921. This act provides that "For the period in the [729] taxable year 1946 between the effective date of this Act and the end of the calendar year, *the tax shall be measured by the taxpayer's net income* as hereinafter defined *for the calendar year 1945,* . . ." And, "*For the taxable year 1947 and each taxable year thereafter the tax shall be measured by the taxpayer's net income . . . for the preceding calendar year.*" This act was approved on April 23, 1946, but it recited, in conclusion, "Since the Constitution of Missouri of 1945 provides that all inconsistent laws shall be void after July 1, 1946, . . . this act shall become effective from and after its passage and approval *but shall become operative on July 1, 1946.*" Finally, in so far as they bear on this case, the General Assembly enacted a law relating to assessors in cities of the first class and the taxation of real and tangible personal property. Laws Mo. 1945, p. 1253. This law specifically repealed those sections of the city's charter which in effect were inconsistent with the Constitution and the new tax scheme and the act specifically repealed Mo. R. S. A., Sec. 6306 under which the City of St. Joseph levied the ad valorem tax on bank shares involved in this appeal. That act was approved on April 19, 1946, and was stated to be effective from and after its passage and approval. However, Section 2 of the act says that "*The passage of this Act shall not affect the*

*liability of any tax payer fixed for the fiscal year of 1946* by the laws applicable prior to the passage of this Act to the assessment and collection of taxes in cities of the first class for the fiscal year of 1946. *It being the intent of this Act that it shall supplement and amend the method for the assessment and collection of taxes for cities of the first class beginning with the fiscal year of 1947* and thereafter in accordance with the Constitution of Missouri adopted during the year 1945.''

It is these provisions of the Constitution and these enactments of the General Assembly that the appellants claim deprived the city of the power to levy an ad valorem tax on bank shares and vested in the state the exclusive power to levy any intangible personal property tax. One point, for example, is that Mo. R. S. A., Secs. 10959-10960 constituted the general law and right authorizing ad valorem taxes and that when the General Assembly repealed those sections (Laws Mo. 1945, p. 1782) it impliedly, if not directly, repealed Mo. R. S. A., Sec. 6306 and thereby destroyed the city's power to levy the ad valorem tax. This law and the general classification law (Laws Mo. 1945, p. 1799) were effective as of December 5, 1945 and December 19, 1945, respectively. It is urged that Sections 10959-10960 constituted the sole authority for levying such a tax and that Section 6306 did not add anything to the city's power in this respect. But, as is well-known, municipalities in Missouri may only levy taxes in the manner and for the purposes granted by the state.. Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 913, 87 S. W. (2d) 195. Under both the old and the new constitutions the legislature is authorized to delegate to municipalities the power to tax and, under the new within certain limits, determine the kind of taxes the cities may impose and prescribe the manner of levy and collection. And, the General Assembly may perform this function by a general law. Coleman v. Kansas City, 353 Mo. 150, 160-161, 182 S. W. (2d) 74, 77. Section 6306 in the charter of St. Joseph was such a general law and was not repealed, either expressly or by implication, by Laws of Mo. 1945, pp. 1782, 1799. The fact that the General Assembly in another act revised the city's tax structure and expressly repealed Section 6306 would seem to confirm this view.

Then, the argument is advanced, if the city's power to levy this tax was not destroyed by these acts, that it was destroyed by the constitutional provisions and the other legislative enactments, above set forth, setting up the new tax scheme and particularly in giving to the state the exclusive power to levy and collect taxes on intangible personal property, including the income of banks. Const. Mo. 1945, Art. 10, Sec. 4; Laws Mo. 1945, pp. 1799, 1915, 1921. Some of these acts and the Constitution were effective in March and December of 1945 and April of 1946 and, therefore, it is argued that the city's power to levy this tax was destroyed before the city could lawfully

assess and levy the tax. Auxiliary ▇▇▇ rules for construing constitutions (16 C. J. S., Secs. 12-38, pp. 48-78) and statutes are employed and, under those, it is urged that all these enactments repealed or destroyed the city's power to levy the tax and certainly so by July 1, 1946, when under the second schedule of the Constitution all inconsistent laws were to expire.

The schedules to the Constitution are the temporary enactments, designed to effectuate a transition from the old fundamental law to the new and, normally, the latter provisions of an enactment prevail over the earlier ones. State ex rel. Aquamsi Land Co. v. Hostetter, 336 Mo. 391, 79 S. W. (2d) 463. We are aware of the fact, also, that it is our duty to harmonize all these enactments of the General Assembly with one another and with the Constitution and to effectuate all of them into the contemplated new tax pattern, if possible. State ex rel. McDowell, Inc., v. Smith, 334 Mo. 653, 668, 670, 67 S. W. (2d) 50, 56-57. But, the application of the general auxiliary rules of construction does not necessarily produce a solution of the problems posed by this case.

It is true that the second schedule contemplated the extinguishment of all laws inconsistent with the Constitution by July 1, 1946. In this connection, however, schedule five provides that "All rights, claims, causes of action and obligations existing . . . *and all fines, taxes,* penalties and forfeitures *assessed, levied, due or owing prior to the adoption of this Constitution shall continue to be as valid as if this Constitution had not been adopted.*" Thus schedule two continues unrepealed inconsistent laws to July 1, 1946 and schedule five preserves the validity of any taxes assessed prior to the adoption of the Constitution which would necessarily include those assessed under an inconsistent law.

In this connection, as we have indicated by direct quotation, the act which specifically repealed the city's power to levy an ad valorem tax on the value of bank shares expressly provided that "The passage of this Act shall not affect the liability of any taxpayer fixed for the fiscal year of 1946 by the laws applicable prior to the passage of this Act to the assessment and collection of taxes in cities of the first class for the fiscal year of 1946." It is also recited that it is the intent of this act to supplement the method for the assessment and collection of taxes for cities of the first class "beginning with the fiscal year of 1947 and thereafter in accordance with the Constitution of Missouri adopted during the year 1945." As we pointed out above, the general intangible personal property tax law and the general tax classification law did not repeal the city's power to assess and levy the tax and the legislative enactment which did repeal the city's power expressly saved to the city the liability of any taxpayer to a city of the first class for the year 1946. Considering all the acts and the schedules of the Constitution the earliest date upon which all these enact-

ments could have become operative, regardless of when they might otherwise become effective, was July 1, 1946, when all laws inconsistent with the Constitution were to expire.

But there is a further reason why the Bank Tax Act (Laws of Mo. 1945, p. 1921) could not operate as to these banks in St. Joseph for the entire fiscal year 1946 and thus supplant or supersede the city's tax. The act was approved on the 23rd day of April 1946 but by its own terms was to "become operative on July 1, 1946." As we have noted the act levies an annual tax on banks based on their net incomes. It provides "B. For the period in the taxable year 1946 between the effective date of this Act (July 1, 1946) and the end of the calendar year, the tax shall be measured by the taxpayer's net income as hereinafter defined *for the calendar year 1945,* . . . " For the tax year 1947 and thereafter the tax is to be measured by the taxpayer's income "for the preceding calendar year," or here 1946. Plainly, therefore, the act which by its own terms is to become operative on July 1, 1946, levies a tax for the year 1946 on the taxpayers, the banks, income for one half year prior to the operative period of the act if not upon their incomes for 1945. In so doing the act clearly falls within the prohibition of another section of the Constitution. The Constitution of Missouri, the old as well ▆▆▆ as the new, unlike most constitutions (annotations 11 A. L. R. 518; 109 A. L. R. 523; 118 A. L. R. 1153) provides "That no ex post facto law, nor law impairing the obligation of contracts, *or retrospective in its operation,* . . . *can be enacted."* Const. Mo. 1945, Art. 1, Sec. 13. The schedules do not indicate that any exception to this provision of the Bill of Rights was intended by the Constitution or contemplated in the General Assembly's effectuating the new tax pattern. Even though a tax to be assessed and collected in one year on the income of the preceding year "is a tax for the year of its collection, and not for the year in which the income was received" (61 C. J., Sec. 2331, p. 1581). the tax imposed by the Bank Tax Act, however it is viewed, is retrospective in its operation and could not be effective in the circumstances of this case and in any event prior to July 1, 1946. Smith v. Dirckx, 283 Mo. 188, 223 S. W. 104, 11 A. L .R. 510; State ex rel. Koeln v. Southwestern Bell Tel. Co., 316 Mo. 1008, 292 S. W. 1037; Graham Paper Co. v. Gehner, 332 Mo. 155, 59 S. W. (2d) 49.

In May 1919 the General Assembly amended the 1917 income tax law by increasing the tax rate on net incomes for the calendar year 1919 from one half of one per cent to one and one half per cent. In Smith v. Dirckx, supra, the court held that in so far as the act sought to increase the rate on incomes received prior to the effective date of the act that it was retrospective and void. In 1921 the General Assembly amended the income tax law by decreasing the rate and it was held that the act could not operate retrospectively on income received prior to the effective date of the act. State ex rel. Koeln v.

Southwestern Bell Tel. Co., supra. In 1927 the income tax law was again amended by, in effect, changing the rate and again it was held that the act could not operate retrospectively on income received prior to the effective date of the act. In that case, Graham Paper Co. v. Gehner, supra, it was argued that the change was detrimental to the state only and not to the taxpayer and, therefore, there could be no objection to the act's retrospective operation. But the court pointed out that this contention violated another provision of the 1875 Constitution: "The General Assembly shall have no power to release or extinguish, . . . in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or other municipal corporation therein." Const. Mo. 1875, Art. 4, Sec. 51. This provision is carried forward in the Constitution of 1945, 'Art. 3, Sec. 39(5) and is applicable to this case.

It is our conclusion that the application of the usual auxiliary rules of construction does not reconcile and harmonize these various constitutional provisions and legislative enactments into a tax pattern which can become immediately effective as to all the parties and the situation presented by the circumstances of this case. The result is, as the trial court declared, that the city tax and ordinance is valid and operative for the year 1946 as to all the banks. The Bank Tax Act is certainly retrospective and inoperative as to all the parties in the City of St. Joseph prior to July 1, 1946. The various constitutional and legislative enactments having authorized cities of the first class to levy an ad valorem tax on national bank shares for the tax year 1946 the Bank Tax Act on net income could not be operative as to national banks in the City of St. Joseph after July 1, 1946 because "The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, . . ." 12 U. S. C. A., Sec. 548; Buder v. First National Bank, 16 Fed. (2d) 990; State ex rel. Orr v. Buder, 308 Mo. 237, 271 S. W. 508; Board of Commissioners v. State Board of Equalization, 155 Okla. 183, 8 Pac. (2d) 732. The Bank Tax being inoperative in St. Joseph for the year 1946 as to national banks there could be no question of credits in the national banks' 1947 taxes. State ex rel. Meyer Bros. v. Koeln, 282 Mo. 438, 222 S. W. 389; State ex rel. Amer. Mfg. Co. v. Koeln, 278 Mo. 28, 211 S. W. 31. The only reason offered for the Bank Tax Act not being applicable to the state banks after July 1, 1946, is the state's policy of maintaining them on a ▮ parity with competing national banks. But no legal reason for their being exempted after July 1, 1946 is suggested and we know of none, consequently from and after that date the appellant state banks in St. Joseph are subject to the act and are entitled to the corresponding credits provided "during the relevant income period." Laws Mo. 1945, p. 1921, Sec. 3.

1216

The judgment as to the appellant national banks is affirmed, as to all the other appellants the judgment is reversed and remanded for modification and further proceedings consistent with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.