## STANOLIND CRUDE OIL PURCHASING CO. v. STATE BD. OF EQUAL. et al.

No. 25218.    Sept. 17, 1935.

Rehearing Denied Oct. 22, 1935.

Clay Tallman, Guy H. Woodward, and O. C. Cash, for plaintiff in error.

J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for defendants in error.

CORN, J.  This is an appeal from an order of the State Board of Equalization equalizing, adjusting, and correcting the valuation of property for the year 1933.

The State Board of Equalization adopted a resolution to equalize the county assessments of steel crude oil tankage as follows:

"Be it further resolved, that it is the intention of the board to so equalize, adjust, and correct the county assessments of steel crude oil tankage so as to make that class of property assessed at a maximum value of nine cents per barrel on tankage over seven years old and thirteen and one-half cents per barrel on tankage under seven years old."

The State Board of Equalization also equalized the value of real estate of the various counties, in some of which the valuation was increased and in some decreased, while in others the valuations were accepted as certified by the county boards.

The appellant, the Stanolind Crude Oil Purchasing Company, owned tank farms in Carter, Creek, Lincoln, Osage, Payne, and Pottawatomie counties. This company listed its steel crude oil tankage with the county assessors at a flat rate of five cents per barrel for the year 1933. The effect of the action of the State Board of Equalization was to increase the company's tankage about 80 per cent., according to its complaint, over its valuation as voluntarily rendered to the county assessors for that year, while the increase or decrease in the valuation of the real estate in these counties, as fixed by the State Board of Equalization, varied only a small per cent. from the valuations fixed by the county boards.

Most of appellant's tank farms were situated upon lands owned in fee by appellant, while some were on leased lands.

Appellant contends that the storage tanks and fixtures on the land owned in fee are a part of the real estate and are not subject to taxation as personal property, and that the State Board of Equalization was without authority to equalize and assess such real estate as personal property, or to equalize said real estate on a different or higher percentage than all other real estate equalized by said board in said counties.

The appellant cites numerous authorities to show that improvements of this character are a part of the real estate, and vigorously contends that tankage on its own land should be taxed as real estate and not as personal property. The authorities cited

are not applicable to the classification of property for the purpose of taxation.

Under the Constitution of this state property may be divided into different classifications for the purpose of taxation. Section 22, art. 10, of the state Constitution provides as follows:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation and the valuation of different classes by different means or methods."

It has been repeatedly held by this court that classification of property for taxation is a legislative function, and when such classification is not based upon an invidious or unreasonable distinction, it will not be interfered with by the court. Bonaparte, County Treas., v. American First National Bank, 139 Okla. 189, 281 P. 958; Board of County Comissioners of Oklahoma County v. State Board of Equalization, 155 Okla. 183, 8 P. (2d) 732; Comanche County et al. v. American National Bank of Lawton, 122 Okla. 34, 252 P. 408.

In Pure Oil Pipe Line Co. v. Cornish, 163 Okla. 79, 20 P. (2d) 1041, this court quoted with approval from In re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 P. 362, as follows:

"The power of the Legislature to distinguish, select, and classify objects of taxation has a wide range of discretion. While the classification must be reasonable, and not arbitrary, there is no precise application of the rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons or things. This right is expressly recognized in section 22, art. 10, of the Constitution, which provides that nothing therein shall be held or, construed to prevent the classification of property for purposes of taxation and the valuation of different classes by different means or methods."

The Legislature of this state in 1909, acting pursuant to the authority conferred under section 22, art. 10, Constitution, classified tanks for the storage of crude petroleum as a separate and distinct class of property for the purpose of ad valorem assessment.

Section 13, art. 3, chapter 38, S. L. 1909, which is section 12605, O. S. 1931, in part provides:

"Every person, firm, company, or association, their lessees, trustees or receivers, owning, operating or controlling any oil or gas well or any property of any kind used by or for the purpose of producing, pumping, distributing or storing crude oil or natural gas as herein defined, except public service corporations, shall on the first day of March of each year, or within 30 days thereafter, make out and deliver to the township assessor of the municipal township in which said well is situated, a statement in writing verified by oath of the officer, agent or employee of any such person, firm, company, corporation or association, their lessees, trustees, or receivers having knowledge of the facts set forth in separate entries, the following, to wit: * * *

"Fifth. * * * The number and size of all wooden and steel tanks, and the number thereof and the name of the owner thereof. * * *"

Section 14, art. 3, chapter 38, S. L. 1909 (sec. 12606 O. S. 1931), in part, provides:

"It shall be the duty of the township assessor of any township in which tanks or tank farms for the storage of crude petroleum are located to assess as other property is assessed, to the property owners * * * any and all such tanks."

In 1911 the Legislature abolished the office of township assessor and the township equalization board, and created the office of county assessor and a county board of equalization, and the powers and duties of the township assessors were transferred to and conferred upon the county assessor, and likewise the powers and duties of the township equalization board were transferred to and conferred upon the county board of equalization.

It was the intent of the Legislature to create a new classification for the particular kind of property used in the rapidly developing petroleum industry in this state. The necessity for such classification is obvious, as it would be impossible to make an intelligible assessment of such property without itemizing and listing the same as required by the statute.

Appellant would have its storage tanks situated on leased lands considered as personal property and taxed as such, and yet vigorously insists that its storage tanks situate upon its fee-owned lands be assessed and taxed as real estate. It is evident that such a system of taxing the property of oil companies would lead to endless confusion and would make it extremely difficult to levy a uniform tax on that class of property. We cannot conceive of a more simple, just, equitable, and uniform system of levying taxes on storage tanks than the one used by the State Board of Equalization.

322

The appellant failed to offer any evidence at the hearing that was of any value or assistance to the State Board of Equalization in determining the true value of the tanks. Its witnesses based their valuation of the property upon what the tanks would bring as salvage or junk, or what they would be worth for the purpose of cutting down and removing to some other location for reconstruction.

This is by no means a proper way to determine the fair cash value of property at a fair voluntary sale, at which property is required by the Constitution and statutes of this state to be assessed.

It appears from the evidence that the appellant was a going concern and that said tanks were in use by the company and were indispensable to the successful operation of the business, and taking into consideration the various factors making up the actual value of said property, we are of the opinion that the valuation thereof as fixed and determined by the State Board of Equalization is not excessive, but is just, fair, and uniform with all other property of the same class in this state.

Section 8, art. 10, of the State Constitution provides that:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

No particular method of valuation is prescribed by the Constitution or the statutes for the guidance of the Board of Equalization in determining the value of property, and the method used in this case is immaterial, so long as it does not appear that the value so determined and fixed by the board does not exceed the fair cash value of the property. The same method was applied to all tankage in the state, thereby effecting uniformity of valuation, and equally distributing the tax burden upon that class of property.

In reviewing the assessment of the State Board of Equalization, the presumption exists in favor of the correctness of the determination of the value fixed by the board. See In re Kansas City Southern Ry. Co., and authorities therein cited, 168 Okla. 495, 33 P. (2d) 772. The appellant has failed to overcome this presumption by sufficient competent evidence.

The order of the State Board of Equalization is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, PHELPS, and GIBSON, JJ., concur. RILEY, J., absent. BUSBY, J., not participating.