KETCHIKAN PACKING COMPANY, Plaintiff,

v.

CITY OF KETCHIKAN, Defendant.

WARDS COVE PACKING COMPANY, Plaintiff,

v.

KETCHIKAN INDEPENDENT SCHOOL DISTRICT, FIRST DIVISION, TERRITORY OF ALASKA, Defendant.

Nos. 3801–KA, 3802–KA.

District Court, Alaska, First Division, Ketchikan.

Dec. 8, 1958.

P. J. Gilmore, Jr., Ketchikan, Alaska, Edward A. Rauscher, of Weter, Roberts & Shefelman, Seattle, Wash., for Ketchikan Packing Co. & Wards Cove Packing Co.

Victor P. Guns, Ketchikan, Alaska, for city of Ketchikan.

C. L. Cloudy, of Ziegler, Ziegler & Cloudy, Ketchikan, Alaska, for Ketchikan Independent School Dist.

KELLY, District Judge.

This suit involves two separate claims for relief from tax assessments levied by the City of Ketchikan and by the Ketchikan Independent School District against the plaintiffs' property, which claims have been consolidated on appeal. The plaintiffs are owners of fish canneries located in the Ketchikan area. Apparently the assessments were made on plaintiffs' property in the spring of 1956, and notices of taxes owed by them were filed and served in May of 1956.

It appears that the foundation of the assessments made against the plaintiffs' canneries rests principally upon replacement cost less depreciation and various other allowances. In fixing the reproduction cost of the property taxed, the appraiser relied upon a government manual, obtaining a multiplying factor based on costs in Washington for the year 1950. By use of the factor, adjustments could be made for replacement costs in Ketchikan for the year 1956. Through observation and survey, the appraiser was required to ascertain whether the buildings and equipment of these canneries could be categorized as "good" or "fair." Upon making his determination as to the quality, the particular item was multiplied by the factor, thereby obtaining the assessed value. The factor decided upon was 1.9, placing Ketchikan reproduction costs at approximately twice the amount that it would be necessary to expend in the State of Washington for the reproduction of similar items.

The plaintiffs both urge that the predominant consideration in fixing value of their buildings and equipment should have been the sales price of other canneries. It is also contended that the appraiser incorrectly assumed an available fish supply in making his assessments. Numerous other errors have also been assigned to the appraiser. As a result of these alleged errors, the plaintiffs claim relief from the assessments on the grounds set forth and discussed in this opinion. There is no claim for relief from the assessments fixed on the land of the Wards Cove Packing Company. However, relief is requested from the assessed valuation placed on the land of the Ketchikan Packing Company.

The Court, in opinion filed May 14, 1957, 150 F.Supp. 735, allowed the plaintiffs to proceed in this action for refund of tax payments, paid under protest. The Court found that the protested tax payments were made under duress due to penalties that would attach to the taxpayers in the event they failed to pay the contested taxes. It has been previously indicated by this Court that where a statutory remedy does not cover the particular situation, as where taxes are paid under duress or coercion, and under protest, an action at common law may be brought for a tax refund. Pacific American Fisheries v. Mullaney, D. C.1952, 108 F.Supp. 133, 14 Alaska 75.

The plaintiffs first allege that any overassessment, however slight, made in pursuance of the taxing statute, is illegal and will entitle the taxpayers to a refund in the amount that the assessment exceeds the true value of the property taxed. It has been recognized and well settled that in cases such as this, where the value of taxed property is in dispute, there is a presumption of validity of the appraised value, and the Court will not substitute its judgment as to valuation for that of the appraiser. The determination of value is but a product of sound judgment and discretion, and slight error in the exercise of that function by the appraiser is not sufficient to entitle the plaintiffs to relief. Mathematical exactness is not required under any system of taxation, and for this reason the Court should not be disposed to grant relief and disturb the judgment of the appraiser where the question is simply one of overvaluation. Auditor General v. Sage Land & Improvement Co., 1901, 129 Mich. 182, 88 N.W. 468, 56 L.R.A. 105; Helin v. Grosse Pointe Tp., 1951, 329 Mich. 396, 45 N.W.

2d 338; Board of County Com'rs of Ada County v. Sears, Roebuck & Co., 1953, 74 Idaho 39, 256 P.2d 526; People ex rel. Callahan v. Gulf, Mobile & Ohio R. Co., 1956, 8 Ill.2d 66, 132 N.E.2d 544, certiorari denied 1956, 352 U.S. 832, 77 S.Ct. 46, 1 L.Ed.2d 52. Consistent with the principle of these decisions, it is also recognized that mere error in judgment by the appraiser as to valuation affords the taxpayer no constitutional remedy. Southern Ry. Co. v. Watts, 1923, 260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375; Hudson Motor Car Co. v. City of Detroit, 6 Cir., 1943, 136 F.2d 574. Testimony presented during the course of the trial indicates that most of the property within the Ketchikan area is overvalued. Under these circumstances, it would be just to grant the plaintiffs relief on the grounds of overvaluation alone only if the Court were to arbitrarily establish the true value of all property in Ketchikan. Sloman-Polk Co. v. City of Detroit, 1933, 261 Mich. 689, 247 N.W. 95, 87 A.L.R. 1294. Clearly, this Herculean task would be outside the province of the Court.

■ The plaintiffs next contend that the assessments made on their fish canneries were discriminatory and nonuniform. For their argument the plaintiffs rely on the sole allegation that the appraiser incorrectly assumed the availability of a fish supply in making the assessments. The Court is unable to agree that relief may be granted here on these grounds. In the absence of any showing that taxpayers of a class similar to that of the plaintiffs were assessed at lower rates through deliberate design of the tax authorities, or that there was some significant inequality among these taxpayers similarly situated, the Court is not prepared to find that the assessments were nonuniform or discriminatory. Sunday Lake Iron Company v. Township of Wakefield, 1918, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154; Sioux City Bridge Co. v. Dakota County, 1923, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340. Sufficient evidence has not been introduced to uphold a finding upon which it could be predicated that other canneries were deliberately taxed at lower rates or at significantly lower values attributable to a failure of the tax authorities to take the same factors of value into consideration.

■ It is further alleged by the plaintiffs as grounds for relief that unreasonable methods were used by the appraiser in fixing valuation, and that the assessments, as such, were arbitrary. Essentially, these grounds for relief are the same. The Court believes it to be the better rule that where no statutory method of valuation is prescribed, the method of assessment is immaterial and of itself affords no grounds for relief so long as the assessed value is not grossly excessive of the true and full value of the property taxed. Stanolind Crude Oil Purchasing Co. v. State Board of Equalization, 1935, 174 Okl. 320, 49 P.2d 1089; Bailey v. Megan, 8 Cir., 1939, 102 F.2d 651; Grand Trunk Western R. Co. v. Brown, D.C.1940, 32 F.Supp. 784; People ex rel. Ruchty v. Saad, 1952, 411 Ill. 390, 104 N.E.2d 273.

Even in those cases where assessments have been stricken down on the grounds that unreasonable or arbitrary methods were employed by the appraiser, it does not appear that they would have been without a finding also of excessive valuation. Indicating this view, it was expressed in Adams County v. Northern Pac. Ry. Co., 9 Cir., 1940, 115 F.2d 768, at page 778, that:

"It is sometimes said in the decisions of the state court that the method of assessment may be such as to make the tax void; but as we understand these decisions this statement merely means that in considering whether or not the tax is excessive it is proper to consider the method by which the taxing authority reached its conclusion. * * * But the mere fact that the method is wrong will not justify the court in setting the assessment aside. It is only when the valuation is fraudulently excessive that the courts of equity can intervene."

Consistent with these decisions, it is the Court's opinion that the real gravamen of a suit of this nature is one of excessive valuation amounting to a constructive fraud.

A discussion of the issues of this case has reduced the plaintiffs' demands for relief to the single determination of whether or not the assessed valuations were so grossly excessive as to afford them relief. Generally, where the assessed value is grossly excessive of the actual value of the property, the court may grant relief to the taxpayer. Even though the action for tax refunds may be one at law, relief is predicated on equitable considerations. The real basis of relief is one of constructive fraud, that is, the assessed value lies outside the area where it could be said to be the reasonable product of an honest difference in judgment by the appraiser. Poland v. City of Pahokee, 1946, 157 Fla. 179, 25 So.2d 271; Appeal of Dubuque-Wisconsin Bridge Co., 1946, 237 Iowa 1314, 25 N.W.2d 327; Knappton Towboat Company v. Chambers, 1954, 202 Or. 618, 276 P.2d 425, 277 P.2d 763; People ex rel. Callahan v. Gulf, Mobile & Ohio Railroad Co., supra. Although there may be no actual intent to defraud the taxpayer through excessive valuation, there are sufficient grounds for judicial intervention so as not to subject the taxpayer to more than his fair share of the tax burden. There is also authority for the plaintiffs' contention that the tax authorities are enjoined by constitutional limitations from subjecting the property owner to an unequal burden through excessive valuation. Great Northern Ry. Co. v. Weeks, 1936, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; In Re Chicago Rys. Co., D.C.1948, 79 F.Supp. 989, affirmed 7 Cir., 1949, 175 F.2d 282, certiorari denied People of State of Illinois v. Sullivan, 1949, 338 U.S. 850, 70 S.Ct. 94, 94 L.Ed. 521.

The acquisition costs of the Ketchikan Packing Company property were set forth in detailed answers to interrogatories propounded by the defendants. These costs are approximated as follows: Land, $39,000; personal property, $132,000; buildings, $170,000. It is alleged by plaintiff that the actual value of these items for tax purposes is $145,000.

The land of the Ketchikan Packing Company was assessed at a value of $87,000, and is alleged by plaintiff to have a value not in excess of $45,000, although the testimony of the witnesses of the plaintiff would place the estimated figure closer to $25,000. In fixing the assessment, it appears that the appraiser gave great weight to the consideration of the close proximity of the land to the business section of the City of Ketchikan and to the waterfront. Additional consideration was given to other sales in the vicinity of the cannery. It is alleged by the Ketchikan Packing Company that some of these sales were involuntary, others not comparable to the Ketchikan Packing Company realty, and that a number of these sales involved property sold at a value from 50% to 60% of the assessed land valuation. However, the Court is not inclined to the view that the land valuation was so grossly excessive as to warrant judicial interference with the valuation placed on the land by the tax authorities. Due consideration must be given their experienced judgments. Much of the land had been acquired before 1940, and all of it prior to 1950. Since the date of acquisition of the property, it can be reasonably expected that much of the land in the Ketchikan area has increased in value. It was for the appraiser to consider what this general increase may be, as well as the effect of the location of the land for residential and commercial purposes. It was proper to consider the sales price of other property in the vicinity of the plant. Even though land sales may not be exactly comparable, they may be properly considered, insofar as they indicate tendencies. State ex rel. Flambeau Paper Co. v. Windus, 1932, 208 Wis. 583, 243 N.W. 216. From these sales and other transactions presented in evidence, the Court finds that it can be reasonably deduced that the land had a much higher value than the cost of acquisition, and

that the assessed value does not transgress the area of honest differences as to a proper valuation.

The improvements and personal property of the Ketchikan Packing Company were assessed at a value of $446,500, whereas the value is alleged by plaintiff to be only $100,000. However, the Court is compelled to dispose of any acceptance of the Ketchikan Packing Company's alleged valuation, especially in view of evidence that clearly shows that over $120,000 in improvements alone were made to the cannery in recent years preceding the date of valuation. The alleged value is further contradicted by the testimony of the plaintiff's witnesses who placed a value of $150,000 on the plant and equipment.

Section 48–1–1, A.C.L.A. 1949, requires all property to be assessed at its true and full value. There is no doubt that the market value, that is, the price at which property could be sold or exchanged in the ordinary course of business and under fair conditions, would in most instances be the most appropriate standard for valuation purposes, and that this value is usually determined by comparable sales, which in turn expresses the product of the elements of value taken into consideration by numerous purchasers. There is some evidence introduced by the plaintiffs showing the sales prices of other canneries. However, the appraiser rejected these sales prices as not comparable on grounds that they did not involve canneries comparable in quality to the plaintiffs' canneries, and that the area in which they were sold was more drastically affected by decreased runs of salmon. There is further evidence presented that the entire fish industry experienced decreased runs of salmon in recent years, and that there is much speculation that fish traps, upon which canneries are to some extent dependent for their sources of supply of fish, may be abolished. Apparently, the tax authorities subscribed to the theory that fish supplies are cyclical, and that the present condition of decreased runs of salmon was only temporary. This theory is not a novel one, and has some merit. In view of the above considerations, the Court is not prepared to state that the appraiser committed error in rejecting the sales prices of other canneries as the standard of value, especially in view of numerous decisions to the effect that the tax authorities should be permitted to utilize some system of taxation that would create a degree of permanency in the valuation of fixed assets, so as not to be affected by temporary and speculative adverse conditions in making their assessments. Tremont & Suffolk Mills v. City of Lowell, 1930, 271 Mass. 1, 170 N.E. 819; Somers v. City of Meriden, 1934, 119 Conn. 5, 174 A. 184, 95 A.L.R. 434; Alfred J. Sweet, Inc. v. City of Auburn, 1935, 134 Me. 28, 180 A. 803, 104 A.L.R. 784; Hackensack Water Co. v. Division of Tax Appeals, 1949, 2 N.J. 157, 65 A.2d 828; Meade Heights, Inc. v. State Tax Commission, 1953, 202 Md. 20, 95 A.2d 280. The Court feels that these decisions are particularly appropriate to the circumstances of this case, as where an industry's source of supplies is known to fluctuate highly, and that replacement cost less depreciation is a legitimate method of valuing the property.

Since the taxing statute prescribes no exact method of valuation, the tax authorities have the right to use any fair formula that might give effect to the intangible elements that influence valuation. And this implies that corporate property may be taxed so as to reflect the going concern value. Adams Express Company v. Ohio State Auditor, 1897, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965; Trustees of Phillips Exeter Academy v. Exeter, 1943, 92 N.H. 473, 33 A.2d 665; Railway Express Agency v. Commonwealth of Virginia, 1954, 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 337. The question of an available fish supply bears a relation to the condition of the industry and it should therefore be a proper consideration in determining value. See State ex rel. Flambeau Paper Co. v. Windus, supra. But, where supplies of fish are known to fluctuate periodi-

cally, due to adverse or favorable conditions that affect runs of fish, and where there is no way of knowing with certainty in what year the fish supply may be depleted or plentiful, too much reliance cannot be placed on the plaintiffs' contention that the assessed valuation of their property should be directly proportionate to the available fish supply during the taxable year.

There is ample authority for the view that if adverse conditions continue over a substantial period of time, the assessment may be found to be excessive if too little or no consideration is given adverse economic circumstances. Great Northern Ry. Co. v. Weeks, supra. The plaintiffs' attack on the assessment seems to be directed to this point. However, as previously stated, the appraiser believed the present condition to be only temporary. If, in every instance, the Court were to cast aside the incidents necessary to the use of the property, no method of valuation other than salvage value would be justified. There is evidence that the appraiser used a factor lower than necessary in making the assessments so as to give relief to the canneries through lower valuation. It also appears that various other allowances were deducted from the reproduction cost, in addition to depreciation. It was for the tax authorities to discern within honest limitations to what extent allowances should be permitted for existing economic conditions, and it does not appear that they have abused their judgment.

The owner of the Ketchikan Packing Company testified that he had offered to sell his cannery for the sum of $200,000, but could not obtain a willing buyer at that price. From this fact it is claimed that the assessment is fraudulent, due to the amount by which it exceeds the reported offer of sale. However, it appears that the number of interested purchasers in an industry whose buildings and equipment are limited to a special purpose would be relatively few. The fact that buildings and equipment can only be sold at a price substantially below that of the assessment does not warrant an automatic reduction of the assessment. In the decision of State of Minnesota v. Federal Reserve Bank of Minneapolis, D.C.1938, 25 F.Supp. 14, this point was discussed adequately by the court. In that case, the reproduction method of determining the market value of the assessed property was upheld, even though the effects of the depression and the character of the assessed property would make it virtually impossible to sell it at its assessed value. The above case bears a similarity to the facts of the instant case, in that the fish industry was affected by general depressed conditions, and in that the character of the property as such would tend to limit the number of willing purchasers.

The Ketchikan Packing Company also contends that the appraiser failed to make sufficient allowance for the functional obsolescence of the buildings. However, even though the testimony presented would indicate that if the buildings were erected today, they would be constructed along different lines, this evidence alone does not warrant a setting aside of the assessment. It would appear that any new buildings of a specialized industry would be constructed along different lines than those of previous years, due to technological advances. Furthermore, the appraiser, in making his assessment, was required to exercise his judgment in determining the actual condition of the buildings. There is insufficient evidence to prove any abuse of discretion in the exercise of this judgment.

No testimony was introduced as to the profits or losses arising from the operation of the plaintiffs' canneries during the taxable year. However, capitalization of income is not a conclusive test of valuation, even though in some instances this method might reflect the true value of the taxed property. The tax authorities committed no error in failing to consider the income from the plaintiffs' canneries under the circum-

**854**

stances presented here. State of Minnesota v. Federal Reserve Bank of Minneapolis, supra.

The Court has discussed the method of valuation employed by the tax authorities, and their consideration of the assumption of an available fish supply in making the assessments. The Wards Cove Cannery was shown to be of a high quality and the Court does not feel that the plaintiffs have sustained their burden in proving the assessment on the land, buildings and equipment of either cannery to be grossly excessive of the true value of the property. Little or no evidence was submitted by the plaintiffs bearing on the valuation of their personal property. Any reduction by the Court of the assessments made on the plaintiffs' canneries would involve the selection of an arbitrary figure of valuation, not supported by sufficient evidence to set aside the tax assessments.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

Judgment in accordance herewith may be submitted.