REVENUE AND TAXATION Water wells, electrical distribution systems and septic tank systems, used only for servicing the homestead, may not be evaluated separately from the homestead for ad valorem tax purposes. The Oklahoma Tax Commission, when performing its statutory duty to assist the State Board of Equalization, is required to conform with a uniform method of determining assessment percentages as established by the State Board of Equalization. The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions: 1. May water wells, electric distribution systems and septic tank systems which are used only for servicing the homestead be evaluated for ad valorem tax purposes separately from the homestead ? 2. Is it proper for the Oklahoma Tax Commission to use any method of determining the assessment percentages other than a uniform method adopted by the State Equalization Board? In response to your first question, it should be initially noted that the homestead has been defined by the Legislature in 68 O.S. 2406 [68-2406] (1977), which provides in relevant part as follows: "The term homestead, as used in 68 O.S. 2408 [68-2408] through 68 O.S. 2419 [68-2419], shall mean and include the actual residence of a natural person who is a citizen of the State of Oklahoma, provided the record actual ownership of such residence be vested in such natural residing and domiciled thereon; . . . A rural homestead shall not include more than one hundred sixty (160) acres of land and the improvements thereon; and an urban homestead shall not include any land except the lot or lots, or the unplatted tract, upon which are located the dwelling, garage, barn and/or other outbuildings necessary or convenient for family use. "The term rural homestead as used herein shall mean and include any homestead located outside a city or town or outside any platted subdivision or addition. "The term urban homestead as used herein shall mean and include any homestead located within any city or town whether incorporated or unincorporated, or located with a platted subdivision or addition, whether such subdivision or addition be a part of a city or town; provided, that in no case shall an urban homestead exceed in area one (1) acre." (Emphasis added) It is clear from a plain reading of the above statute that the legislative intent is that the homestead include that land, or real property, upon which an actual residence is established, as well as all improvements located thereon. The nature of those improvements mentioned in 68 O.S. 2406 [68-2406] (1977) may be adduced by a review of 68 O.S. 2419 [68-2419] (1971), defining real property, which provides as follows: "Real property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, and all rights and privileges thereto belonging or in any wise appertaining, such as permanent irrigation, or any other right or privilege that adds value to real property, and all mines, minerals, quarries and trees on or under the same, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, exclusive of such machinery and fixtures on the same as are, for the purpose of ad valorem taxation, defined as personal property." (Emphasis added) In 68 O.S. 2420 [68-2420] (1971), which defines personal property, it is noted that water wells, electric distribution systems and septic tank systems are not included; therefore, it is apparent that the legislative intent is that the same be included as a part of the home stead, for ad valorem tax purposes, as heretofore defined. In reference to your second question, it should be initially noted that the relevant duties of the State Board of Equalization are set out in 68 O.S. 2455 [68-2455] (1977), which provides in part as follows: ". . ". . . The State Board of Equalization shall have the authority and it shall be its duty to raise or lower the returned value: "(1) Of any personal property, to conform to not to exceed thirty-five percent (35%) of the fair cash value thereof, estimated at the price it would bring at a fair voluntary sale; or "(2) Of any real property not to exceed thirty-five percent (35%) of its fair cash value for the highest and best use for which such property is actually used or classified for use. "It shall be the duty of the State Board of Equalization, with the assistance of the Oklahoma Tax Commission, to do all things necessary to enable it to assess and value all taxable property of railroad and public service corporations, discover omitted property, and determine the taxable status of any property which is claimed to be exempt from ad valorem taxation for any reason. "In the performance of its duties, as herein defined, said Board, or any duly authorized representative thereof, shall have the power to administer oaths, to conduct hearings, and to compel the attendance of witnesses and the production of the books, records, and papers of any person, firm, association, or corporation; and to enter the premises and inspect the property of any taxpayer." (Emphasis added) It should further be noted that the relevant duties of the Oklahoma Tax Commission are set forth in 68 O.S. 2403 [68-2403] (1971), which provides as follows: "The Oklahoma Tax Commission shall have the authority and it shall be its duty to: "(a) Confer with and assist County Assessors and County Boards of Equalization in the performance of their duties, and to the end that all assessments of property be made relative, just and uniform and that real property and tangible personal property may be assessed at not to exceed thirty-five percent (35%) of its fair cash value estimated at the price it would bring at a fair voluntary sale; "(b) Prescribe forms with numbers ascribed thereto for the County Assessors' use in assessment procedure, including property classification and appraisal forms; "(c) Provide technical assistance to County Assessors and County Boards of Equalization in the services of appraisal engineers; "(d) Provide from year to year schedules of values of personal property to aid County Assessors in the assessment of personal property; "(e) Conduct training schools, institutes, conferences and meetings for the purpose of improving the qualifications of County Assessors and their deputies; provided, that such training schools and conferences may be conducted in cooperation with any State educational institutional and/or the County Assessor's Association; "(f) Prepare and furnish from time to time to County Assessors an Assessors' Manual; and "(g) Render such other assistance as may be conducive to the proper assessment of property for ad valorem taxation." (Emphasis added) There is no specific method of valuation prescribed for use by the State Board of Equalization or the Oklahoma Tax Commission in the Constitution or Statutes of the State of Oklahoma, other than the statutory limitations in establishing maximum assessment percentages on real and personal property as hereinabove mentioned. This was noted by the Supreme Court of Oklahoma in Stanolind Crude Oil Purchasing Company v. State Board of Equalization, 174 Okl. 320, 49 P.2d 1089 (1935) and Sinclair Prairie Oil Company v. State, 174 Okl. 109,50 P.2d 150 (1935). These cases involve instances in which the State Board of Equalization raised the taxable value of oil storage tanks in the State of Oklahoma. In the Sinclair Prairie Oil Company case, supra, at 151, the Court stated: "No particular method of valuation is prescribed by the Constitution or the statutes for the guidance of the Board of Equalization in determining the value of the property, and the method used is immaterial so long as it does not appear that the value so determined and fixed by the Board exceeds the fair cash value of the property." (Emphasis added) Identical language to that expressed above was used in the Stanolind Crude Oil Purchasing Company case, supra, at 1091. In so ruling, the Court viewed that the duty to establish a method of valuation is with the State Board of Equalization and it is within the discretion of said Board to determine such a method. In reviewing the statutes heretofore cited and the judicial decisions interpreting the same, it is apparent that the primary responsibility for establishing a method of determining assessment per centages has been directed to the State Board of Equalization, with the assistance of the Oklahoma Tax Commission. In pursuing its statutory duty to assist in determining the proper assessment of property for ad valorem taxation purposes, it logically follows that the Oklahoma Tax Commission does not bear primary responsibility for determining assessment percentages other than as an aid to the State Board of Equalization, or for the assistance of other offices as statutorily defined. Therefore, it is apparent that the State Board of Equalization may prescribe a uniform method for determining said assessment percentages. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Water wells, electrical distribution systems and septic tank systems, used only for servicing the homestead, may not be evaluated separately from the homestead for ad valorem tax purposes. The Oklahoma Tax Commission, when performing its statutory duty to assist the State Board of Equalization, is required to conform with a uniform method of determining assessment percentages as established by the State Board of Equalization. (LARRY D. BARNETT)