URBAN RENEWAL AUTHORITY — ACQUISITION OF REAL PROPERTY Where title to real property is acquired in the month of March by an Urban Renewal Authority and all previous taxes have been paid, there would then be no remaining tax liability to be paid to the county treasurer pursuant to 68 O.S. 24232 [68-24232] (1971). The Attorney General is in receipt of your letter wherein you ask, in essence, the following question: Where an Urban Renewal Authority acquires title to real property in the month of March and the deed thereto is recorded prior to October 1 of the same year, what ad valorem taxes may be due pursuant to 68 O.S. 24232 [68-24232] (1971)? Section 68 O.S. 24232 [68-24232] referred to in your question states as follows: "Whenever the United States, the state, or a city, town, county, school district, or any other political subdivision, including, but not limited to, a turnpike authority, municipal trust, water or conservation district, flood control district, levee or waterway improvement district, urban renewal authority, public housing authority, or any other authority authorized by law, state or federal, acquires title to any real property for a government purpose between January 1 and October 1 of the tax year, such property shall be relieved of ad valorem tax for the remaining months of the year beginning with the first of the month next succeeding the date its acquisition for public purposes becomes a matter of public record, if the deed thereto was recorded prior to October 1; provided, however, that all taxes assessed against such property prior to its acquisition shall be paid in full and there be paid a sum equal to one-twelfth (1/12) times the number of months that the property remained in private ownership of an amount estimated by the county treasurer of the county wherein the real property lies to be substantially equal to the amount of tax which would have been or will become due and payable for the year had the real property not been acquired for public purposes. In estimating the amount of taxes which would have been or will become due and payable for the tax year had the real property not been acquired for public purposes the county treasurer shall use as a basis the current assessment and the tax rate for the preceding year, unless the tax rate for the current year shall be by then determined and set, in which event he shall use as basis the current assessment and rate. The public agency acquiring the property shall deduct the amount of such taxes from the purchase price payable to the private owner and remit the same to the county treasurer in satisfaction of such taxes. The county treasurer of any county is hereby authorized upon order of the board of tax roll corrections to cancel of record all taxes assessed against such property for the year of its acquisition when the deed thereto was recorded prior to October 1 and the aforesaid estimated amount of the tax for the months that the property was in private ownership is paid, which order shall be issued upon application of the acquiring authority." For purposes of examining the question, we will assume the following facts. 1. That the real estate was otherwise taxable on January 1st of the year in which title was transferred to the Urban Renewal Authority. 2. That the ad valorem taxes due and payable on November 1st of the preceding year were paid in full and that no other ad valorem taxes were past due. In your question you further related the problem as to the construction of this statute in that the county assessor, pursuant to the above statute, construes that the tax liability would be equal to three-twelfths (3/12) of the taxes to be assessed during 1975, but the Urban Renewal Authority contends that all taxes have been paid up through and including June 30, 1975, and therefore no tax liability exists at the moment. Article X, Section 1 of the Oklahoma Constitution states as follows: "The fiscal year shall commence on the first day of July of each year, unless otherwise provided by law." Title 68 O.S. 24303 [68-24303](a) (1974) states in part as follows: "(a) All taxes levied upon an ad valorem basis for each fiscal year shall become due and payable on the first day of November, and, unless one-half (1/2) of the taxes so levied shall be paid on or before the first day of January, the entire tax levy for such fiscal year shall become delinquent on said date. If the first half of the taxes levied upon an ad valorem basis for any such fiscal year shall have been paid on or before the first day of January, the second half shall become delinquent on the first day of April thereafter. . . ." The above quoted constitutional provision and a statute very similar to Section 68 O.S. 24232 [68-24232] was construed in an early decision of the Oklahoma Supreme Court in the case of City State Bank of Oklahoma City v. Stone, 158 P. 1168, 59 Okl. 228. In this case the Court was considering the construction of a contract of sale between private parties of certain real property. The contract provided in part the following provision: "We hereby guarantee to pay the 1911 taxes on the same up to and including September 19, 1911 . . ." In construing this contract as to the liability for taxes, the Court considering the constitutional provision, Article X, Section 1, and the 1911 Session Laws which are similar for our purposes to Section 68 O.S. 24303 [68-24303] above quoted, stated in part: "From these provisions of the Constitution and the statute it appears that as to revenue matters the year begins on the first day of July and ends on the 30th day of June following, . . ." The Court further stated: "The agreed statement of fact does not disclose, but it is presumed, that the taxes levied for the fiscal year ending June 30, 1911, had been paid; therefore, up to July 1, 1911, there were no taxes which were due or could be paid upon this property." In so holding the Courts determined that the grantors, pursuant to the contract provision quoted above, owed only those taxes for the year 1911 which accrued between July 1 and September 19, 1911, because the taxes were based upon a fiscal year. Thus, it would appear that in accordance with the Stone case above cited, that assuming the ad valorem taxes due and payable on the November 1 prior to the transfer of title, were paid in full; that no further taxes would be due and owing until the following July 1 or the beginning of the next fiscal year. The above case did not consider a change in taxable status of the property and limited itself to a transfer of title between private parties. Title 68 O.S. 2427 [68-2427] (1971), as amended by House Bill 1225, Thirty-fifth Legislature, First Session, provides that all real property shall be assessed annually as of the first day of January. January 1st has been the historical date on which property is assessed for ad valorem taxes in Oklahoma and our Courts in construing the effect of this procedure in relation to ad valorem taxation stated in the Board of Commissioners v. State Board of Equalization, 8 P.2d 732, as follows: ". . . The fact that the county assessor of Oklahoma county listed the stock of said banks for taxing purposes did not fix any lien or create any liability against said banks for taxes. The lien is created and the liability fixed when the rate is determined and levied as provided by law; . . ." And in the later case of In Re Texas County's Assessment, 168 Okl. 94, 31 P.2d 929, the Court stated in part: "It is thus observed that the tax year is the fiscal year, and begins July 1, instead of January 1. The proceedings by the county assessor and the boards of equalization are preliminary proceedings, preparatory to the levy of the tax by the county excise board for governmental expense during the tax year in which the levy and collection is made." Thus, it can be seen that the preliminary stages of assessment of value as of January 1 of any given year are preliminary to the actual tax levies for the ensuing fiscal year beginning July 1. Our Courts have also construed a change in taxable status of property and its effect on current taxes in the case of Appeal of Crescent Precision Products, Inc., 516 P.2d 275, and this Court stated as follows: "In this state, the fiscal year begins on the first day of July; see Art. X, 1, Oklahoma Constitution, and City State Bank v. Stone, 59 Okl. 228,158 P. 1168. Accordingly, taxes for the payment of the estimated ordinary expenses of government are levied on a fiscal year basis; Art. X, Section 2 Oklahoma Constitution. For these reasons, at least in theory, the expenditure of taxes collected during the 1968 fiscal year began on July 1, 1968. "After an exhaustive search, we have found no case that is precisely in point with this one on the facts, and none is cited in the briefs. On closely related questions, however, we have found no case in which a nontaxable status, or tax exempt status, accruing after the beginning of the fiscal year, was held to have enabled the taxpayer to avoid the payment of taxes for that year. See, for instance, Board of Commissioners of Comanche County v. Central Baptist Church, 136 Okl. 99,276 P. 726, in which this Court held that the accrual of a nontaxable status on August 8th did not apply to the taxes for the current year. "On the other hand, changes in the taxable status of property occurring before the beginning of the fiscal year have frequently been given effect for the fiscal year concerned. See, for instance, In Re Texas County's Assessment, 168 Okl. 94, 31 P.2d 929, in which this Court held that the imposition of a gross production `in lieu' tax pursuant to an Act of Congress approved on February 14th, 1931, had the effect of exempting the property concerned from ad valorem taxes for the fiscal year 1931-32. "We hold that since the constitutional amendment became effective after the beginning of the 1968-69 fiscal year, the property in question was subject to taxation for the 1968 taxable year." The result of these decisions and our statutes would indicate that a change in the taxable status of property prior to the beginning of a fiscal year will not change the tax liability for the current fiscal year, but would be effective for the upcoming fiscal year. Thus, where property is acquired for governmental purpose by the entities enumerated in Section 24232 is a change to a nontaxable status and would take effect for the ensuing fiscal year. What then of the taxes due and payable prior to that upcoming fiscal year? Our Courts have considered such a change in the case of Allen v. Hinshaw, 168 P.2d 625, wherein the United States government condemned certain property in March of 1943 and the payment of funds was written to both the landowner and the county treasurer. The county treasurer estimated the taxes due and payable for the upcoming fiscal year and attempted to retain such monies for those taxes. The Court, in construing the tax liabilities in that case, considered what is now codified as 68 O.S. 2424 [68-2424] (1971) which states as follows: "As between grantor and grantee of any land where there is no express agreement as to who shall pay the taxes that may be assessed thereon, taxes on any real estate shall become a lien on such real estate on the 1st day of October of each year, and if such real estate is conveyed after said date the grantor shall pay such taxes, and if conveyed on or prior to October 1st of such year the grantee shall pay such taxes." The Court held as follows: "The landowners involved here were done with the lien when the lands passed out of their hands prior to October 1, 1943. They made no agreement to pay the taxes for the ensuing fiscal year, and no personal obligation to pay the same could attach to them without such an agreement. And there is no law in this state to justify a judgment in any court fixing the liability upon them. Nor is there a statute in this state authorizing the county treasurer to collect potential taxes by estimating the amount thereof, or otherwise. This is not out of line with justice, for taxes on realty do not constitute a personal obligation; and owners of realty should not be required to pay taxes for a future year for which they receive no governmental protection in return therefor." Accordingly, no liability would attach for ensuing fiscal year taxes under the circumstances of your question unless Section 68 O.S. 24232 [68-24232] requires such a conclusion. Prior to the amendment to Section 24232 in 1970 and 1971, this Section read as follows: "Whenever the United States, the State, or a city, town, county, school district, or any other political subdivision, including a turnpike authority, municipal trust, or any other authority authorized by law, state or federal, acquires title to any real property for a governmental purpose, such property shall be relieved of ad valorem tax for the year in which so acquired if the deed thereto was recorded prior to October 1; provided, however, that all taxes assessed against such property prior to its acquisition shall be paid in full. The County Treasurer of any county is hereby authorized upon order of the Board of Tax Roll Corrections to cancel of record all taxes assessed against such property for the year of its acquisition if the deed thereto was recorded prior to October 1, which order shall be issued upon application of the acquiring authority." (Emphasis added) It can therefore be seen that the main thrust of the amendments in 1970 and 1971 were to relieve the property of ad valorem taxation only for the remaining parts of the tax year in which it was acquired. Certainly if as in the case at hand, the property was acquired in March and if the previous taxes had been paid in full, there would be no tax liability. However, if the property were acquired in between July 1 and October 1, then the county treasurer is to estimate the then current fiscal year taxes accordingly. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Where title to real property is acquired in the month of March by an Urban Renewal Authority and all previous taxes have been paid, there would then be no remaining tax liability to be paid to the county treasurer pursuant to 68 O.S. 24232 [68-24232] (1971). (James H. Gray)